UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUIS SALAMAN, | : | |
|     *Plaintiff*, | : | CASE NO. 3:25-CV-482 (KAD) |
| | : | |
| v. | : | |
| | : | |
| DAVID CARNEY, *et al.*, | : | |
|     *Defendants*. | : | AUGUST 22, 2025 |

**INITIAL REVIEW ORDER**
**RE: COMPLAINT (ECF NO. 1)**

Kari A. Dooley, United States District Judge

On March 24, 2025, Plaintiff, Luis Salaman ("Salaman"), an inmate at Wyatt Detention Facility ("Wyatt") in Central Falls, Rhode Island, filed this Complaint *pro se* under 42 U.S.C. § 1983, naming seventeen federal agents as Defendants. The Complaint brings claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*") for: (1) excessive force and an unreasonable search and seizure under the Fourth Amendment; (2) substantive due process violations under the Fourteenth Amendment; (3) denial of equal protection under the Fourteenth Amendment; (4) cruel and unusual punishment and deliberate indifference to serious medical needs under the Eighth Amendment; and (5) recklessness. As set forth herein, all of the claims in Plaintiff's Complaint are DISMISSED pursuant to 28 U.S.C. § 1915A.

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b). In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[ ]." *Abbas v. Dixon*, 480

F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

The Court has considered all of the allegations set forth in the Complaint and recites herein only those facts pertinent to its initial review.

In the early morning hours of April 5, 2022, members of the New Haven FBI Safe Street Gang Task Force and the FBI swat team (collectively, the "Swat Team") assembled, to conduct a "raid" on a home in New Haven, Connecticut. Compl., ECF No. 1 at ¶ 23. Without announcing themselves, the Swat Team rammed doors in the home and threw flashbangs.[1] *Id.* Salaman was asleep with his girlfriend in the home when the noise from the Swat Team's entry awakened the couple. *Id.* Salaman did not hear the Swat Team announce themselves, but he heard someone shout "open the mother fucking door." *Id.* Salaman also heard someone speaking on a loudspeaker or bullhorn outside the home. *Id.* That person was saying, "[t]his is the FBI[.] [W]e know you are there or inside[.] [O]pen the door or come out with your hands up . . ." *Id.*

Salaman knew who was in the home when he heard the announcement. *Id.* at ¶ 24.

---

[1] "A flashbang is an explosive diversionary device that generates a blinding light and deafening noise to give police a tactical advantage by temporarily disorienting those nearby." *Flournoy v. City of Chicago*, 829 F.3d 869, 872 (7th Cir. 2016).

Salaman attempted to comply with the Swat Team's demands by reaching for the door to open it. *Id.* As Salaman did so, Defendant Special Agent ("SA") David Carney, without warning, "started to recklessly shoot live rounds with his shot gun . . . ." *Id.* The Swat Team leader—Defendant SA Bullets Campbell—ordered agents to "shotgun breach" the kitchen door. *Id.* Six shotgun blasts were fired at the door. *Id.* The shots penetrated the door and struck Salaman in his hands and knees. *Id. at* ¶ 24–25. Agents then slammed Salaman on the floor and dragged him into the living room. *Id.* at ¶ 25.

Defendant Carney came into the living room and pointed his shotgun at Salaman. *Id.* at ¶ 27. Defendant Carney told Salaman not to move and to put his hands behind his back. *Id.* Salaman told Defendant Carney that Salaman could not do so because he was injured. *Id.* Defendant Carney told Salaman not to move, handcuffed Salaman, and told him that someone would look at his injuries. *Id.* Defendant Carney took Salaman downstairs and outside. *Id.* at ¶ 28. Salaman told Defendant Carney that he was in pain. *Id.* Agents walked Salaman to a car, where another agent asked Salaman questions. *Id.* Defendants SA Burke and SA Domachowski transported Salaman in a car to the FBI field office in New Haven. *Id.* During the car ride, Salaman told Defendants Burke and Domachowski that he was in pain and needed medical treatment. *Id.* Defendants Burke and Domachowski told Salaman that he would be evaluated at the field office. *See id.*

Salaman told Defendants Burke and Domachowski, as well as Defendant SA Tae Kim, that he was in pain when they arrived at the field office. *Id.* at ¶ 29. Those same Defendants placed Salaman in an interview room, but allowed him to leave to use the bathroom. *Id.* Once back in the interview room, Defendant Burke told Salaman that paramedics were en route to evaluate him.

3

*Id.* at ¶ 30.  Paramedics soon arrived to assess Salaman's injuries.  *Id.*  Salaman told paramedics he was in pain, and the paramedics cleaned and bandaged Salaman's wounds.  *Id.*  Defendant Burke photographed Salaman's injuries and told Salaman that agents would take him to the hospital "to be looked at," though agents failed to do so.  *Id.*  Salaman was instead taken to court, where another agent told Salaman that he would be taken to the hospital after court.  *Id.* at ¶ 31.  Instead, after his court proceeding, agents transported Salaman to Wyatt.  *Id.* at ¶ 32.  Wyatt medical staff evaluated Salaman at the jail.  *Id.*  Salaman has remained at Wyatt and has never been to the hospital.  *Id.*

**Discussion**

Through this civil action, Salaman seeks damages, as well as injunctive and declaratory relief, against seventeen federal agents (collectively, "Defendants").  *See* Compl. at pp. 2–6, 31–32.  Salaman asserts five claims against Defendants for: (1) excessive force and unreasonable search and seizure under the Fourth Amendment; (2) substantive due process violations under the Fourteenth Amendment; (3) equal protection violations under the Fourteenth Amendment; (4) cruel and unusual punishment and deliberate indifference to serious medical needs under the Eighth Amendment; and (5) recklessness.  *Id.* at pp. 17–28.  The Court will address these claims—each of which arises under *Bivens*—in turn.

<u>*Bivens* Actions Generally</u>

Section 1983 creates a specific damages remedy for plaintiffs whose constitutional rights are violated by state officials.  *See Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017).  But Congress has not created a similar statutory remedy for such claims against federal officials (*e.g.*, FBI agents) acting under the color of federal law.  *See id.*  To state a claim for relief under *Bivens*, a plaintiff

must allege facts plausibly showing that: (1) the challenged action was attributable to a federal agent acting under color of federal authority, and (2) such conduct deprived him of a constitutional right. *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) (citing *Bivens*, 403 U.S. at 389).

Nevertheless, not all constitutional violations give rise to a damages remedy under *Bivens*. The Supreme Court has recognized a remedy for damages in three contexts: (1) a Fourth Amendment search and seizure suit against federal narcotics officers (*Bivens*); (2) a Fifth Amendment due process suit against a congressman-employer on the grounds of gender discrimination (*Davis v. Passman*, 442 U.S. 228 (1979)); and (3) an Eighth Amendment cruel and unusual punishment suit against federal jailers for failure to provide adequate medical treatment (*Carlson v. Green*, 446 U.S. 14 (1980)). *See Abbasi*, 582 U.S. at 131. After those decisions, however, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernández v. Mesa*, 589 U.S. 93, 102 (2020); *see also Egbert v. Boule*, 596 U.S. 482, 502 (2022) ("[I]f we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution."). Indeed, "[g]iven the notable change in the [Supreme] Court's approach to recognizing implied causes of action . . . , the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at 135.

To determine whether a plaintiff's claim may proceed under *Bivens*, courts must conduct a two-step analysis. *Egbert*, 596 U.S. at 492. The first step asks "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the [Supreme] Court has implied a damages action." *Id.* (quoting *Abbasi*, 582 U.S. at 139). "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an

5

officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 582 U.S. at 139–40. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernández*, 589 U.S. at 103.

If a case arises in a "new *Bivens* context," courts proceed to the second step, and consider "whether there are any special factors that counsel hesitation about granting the extension." *Id.* at 102 (cleaned up). The Supreme Court "ha[s] not attempted to 'create an exhaustive list' of factors that may provide a reason not to extend *Bivens*, but [it] ha[s] explained that 'central to [this] analysis' are 'separation-of-powers principles.'" *Id.* (quotation omitted). Accordingly, a court "ask[s] whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy,' and 'whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed[.]" *Id.* (quotation omitted). If "Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Abbasi*, 582 U.S. at 137 (alteration in original) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

In *Egbert*, the Supreme Court observed that the two-part test "often resolve[s] to a single question" of "whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492. The Supreme Court has further instructed that "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or

6

*Carlson* unless [the plaintiff] also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Id.* at 501. Indeed, "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* at 492 (quoting *Hernández*, 598 U.S. at 102).

Here, the Court will consider each of Salaman's claims against the backdrop of this framework.

<u>Fourth Amendment Claims</u>

In Count One, Salaman asserts a Fourth Amendment violation for excessive force and unreasonable search and seizure. *See* Compl. at p. 17. The Court construes Count One as asserting two distinct claims arising under the Fourth Amendment, and addresses each in turn.

*Excessive Force*

Salaman alleges that he was subjected to excessive force when, in connection with his arrest on April 5, 2022, Defendant Carney "recklessly shot through [Salaman's] front kitchen door with his shotgun," striking Salaman in his hands and knees.

Until recently, courts in this Circuit were "split as to whether excessive force claims present a new context under *Bivens*." *Carattini v. Behun*, No. 21-CV-9373 (NSR), 2024 WL 3274663, at *3 (S.D.N.Y. July 2, 2024). But in *Edwards v. Gizzi*, the Second Circuit weighed in. *See* 107 F.4th 81 (2d Cir. 2024) (*per curiam*). In that case, the Second Circuit affirmed the district court's dismissal of a *Bivens* claim "seeking damages from court-security officers and deputy U.S. Marshals for using excessive force while restraining [plaintiff] in a courtroom." *See id.* at 82. Judge Park, concurring in the judgment, concluded that "an Eighth Amendment claim for excessive force against officers in the United States Marshals Service and court-security

7

personnel–'is different in a meaningful way' from the three *Bivens* claims the Supreme Court has recognized." *Id.* (Park, J., concurring) (quoting *Abbasi*, 572 U.S. at 139). However, Judge Robinson, also concurring in the judgment, recognized that a Fourth Amendment claim for excessive force may still be viable. *See id.* at 88 (Robinson, J., concurring) (citing *Snowden v. Henning*, 72 F.4th 237, 239–40, 245–46 (7th Cir. 2023) (allowing a "straightforward application of *Bivens* itself" to proceed in a Fourth Amendment claim against a DEA agent for excessive force in making an arrest). Thus, because *Edwards* concerned only an excessive force claim arising under the Eighth Amendment, it does not resolve the question of whether a Fourth Amendment excessive force claim "is different in a meaningful way from the three *Bivens* claims the Supreme Court has recognized." *Edwards*, 107 F.4th at 82 (Park, J., concurring) (internal quotation marks omitted).

But while *Edwards* does not squarely address the issue, the Court is guided by other recent, non-precedential Second Circuit decisions "affirming the district courts' findings that the plaintiffs' Fourth Amendment *Bivens* claims presented a 'new context.'" *Carattini*, 2024 WL 3274663, at *3 n.3 (citing *Cohen v. Trump*, No. 23-35, 2024 WL 20558, at **2–3 (2d Cir. Jan. 2, 2024) (summary order) (affirming dismissal of *Bivens* claims alleging unlawful seizure, based on "new context" presented by lawsuit against federal officials); *Lewis v. Bartosh*, No. 22-3060, 2023 WL 8613873, at *2 (2d Cir. Dec. 13, 2023) (summary order) (affirming dismissal of *Bivens* claim alleging excessive force, based on "new context" presented by suit against Deputy U.S. Marshals)). "While not explaining their application of the two-part test from *Egbert* with precision, the panels in *Cohen* and *Lewis* both relied on the different agencies and federal officers involved, as well as the existence of an alternative remedy, in declining to infer a *Bivens* cause of action in those cases."

8

*Gray v. Gomez*, 728 F. Supp. 3d 264, 271–72 (E.D.N.Y. 2024) (footnote omitted) (citing *Cohen*, 2024 WL 20558 at *2–3; *Lewis*, 2023 WL 8613873 at *1).

Recent district court decisions addressing Fourth Amendment *Bivens* claims are in accord with the Second Circuit's decisions in *Cohen* and *Lewis*. *See*, *e.g.*, *Escobar v. Correa*, No. 22-CV-8434 (MMG), 2024 WL 4042122, at **4–5 (S.D.N.Y. Sept. 4, 2024) (dismissing *Bivens* claim against U.S. Marshals who allegedly "used 'brutal, retaliatory excessive force' against Plaintiff" when arresting him in a home because claim involved new category of defendant and plaintiff could bring claim under the FTCA); *Shaw v. United States Marshall*, No. 24-CV-5644 (HG), 2024 WL 4574146, at *2 (E.D.N.Y. Oct. 24, 2024) (dismissing *Bivens* claim against U.S. Marshal who allegedly breached the door of plaintiff's home and destroyed her property while searching home, because claim involved new category of defendant and plaintiff could bring claim under the FTCA); *German-Andujar v. U.S. Customs & Border Prot.*, No. 24-CV-6190 (EAW), 2025 WL 1101514 (W.D.N.Y. Apr. 14, 2025) (dismissing *Bivens* claim against border patrol agent who allegedly tackled and beat plaintiff fleeing from an "unwarranted" search because claim involved new category of defendant and plaintiff could bring claim under the FTCA).

This case is partially distinguishable from *Cohen*, *Lewis*, and the district court cases cited above, because this case does not "involve[ ] a 'new category of defendants.'" *Egbert*, 596 U.S. at 492 (quotation omitted). Indeed, like the plaintiff in *Bivens*, Salaman sues FBI agents. *See* Compl. at ¶¶ 5–21; *Abbasi*, 582 U.S. at 140 (noting that *Bivens* involved "a claim against FBI agents for handcuffing a man in his own home without a warrant."). Nevertheless, even if a claim does not involve a "new category of defendants," a *Bivens* remedy may still be "unavailable" if there is an "alternative remedial structure." *See Lewis*, 2023 WL 8613873, at *1 (noting that "'if

9

a claim arises in a new context'— such as if it involves 'a new category of defendants'—*or* if there is an 'alternative remedial structure,' a *Bivens* remedy is generally 'unavailable.'" (alteration omitted; emphasis added)); *Escobar*, 2024 WL 4042122 at *4 (noting that "a *Bivens* remedy is unavailable 'if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure,' even if existing or alternative remedies do not provide complete relief." (quoting *Egbert*, 596 U.S. at 493)).  Such an "alternative remedial structure" is available here.

Indeed, as with the plaintiffs in *Escobar*, *Shaw*, and *German-Andujar*, Salaman could bring a claim under the Federal Torts Claims Act ("FTCA") related to the FBI agents' alleged use of excessive force.  *See*, *e.g.*, *Oliveras v. Basile*, 440 F. Supp. 3d 365, 374–76 (S.D.N.Y. 2020) (concluding that the FTCA provided alternative remedial structure precluding *Bivens* remedy for false arrest and excessive force claims in connection with injurious detonation of explosive devices during raid).[2]  As such, the Court concludes that the availability of this "alternative remedial structure" forecloses a *Bivens* action against FBI agents for excessive force under the Fourth Amendment.  *See Egbert*, 596 U.S. at 497 (that "Congress has provided alternative remedies for aggrieved parties in [plaintiff's] position . . . independently foreclose a *Bivens* action here.").

---

[2] Neither the Supreme Court nor the Second Circuit has explicitly "decided whether, in the wake of *Abbasi*, the availability of an FTCA action precludes the *Bivens* remedy." *Scott v. Quay*, No. 19-CV-1075, 2020 WL 8611292, at *8 (E.D.N.Y. Nov. 16, 2020).  Thus, "absent clear guidance," some courts have been "unwilling to determine that the FTCA alone is a sufficient alternate remedy." *See Mirvis v. Quay*, No. 19-CV-2573 (LDH), 2023 WL 5671935, at *10 (E.D.N.Y. Sept. 1, 2023).  But while the Supreme Court and Second Circuit may not have explicitly stated that the FTCA in particular precludes a *Bivens* remedy, it need not do so because "'*any* alternative, existing process for protecting the [injured party's] interest' . . . itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Abbasi*, 582 U.S. at 137 (emphasis added; alteration in original) (quoting *Wilkie*, 551 U.S. at 550); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 73–74 (2001) (recognizing that state tort law provided alternative means for relief); *Minneci v. Pollard*, 565 U.S. 118, 127–130 (2012) (same).

10

Thus, any Fourth Amendment excessive force claim must be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

*Search and Seizure Claim*

Salaman's Fourth Amendment search and seizure claim arises from Defendants' no-knock raid and arrest of Salaman in his home in the early morning of April 5, 2022. Unlike Salaman's excessive force claim, his unlawful search and seizure claim remains in the "heartland" of *Bivens* cases. *See Edwards*, 107 F.4th at 87 (Robinson, J., concurring). Indeed, *Bivens* held that a plaintiff who was handcuffed by FBI agents in his home without a warrant was entitled to pursue monetary damages for a Fourth Amendment violation. *See Bivens*, 403 U.S. at 397; *Abbasi*, 582 U.S. at 140. It follows that Salaman's search and seizure claim is not "meaningfully different" from the claim considered in *Bivens*. *See, e.g.*, *Prado v. Perez*, 451 F. Supp. 3d 306, 315 (S.D.N.Y. 2020) (concluding that plaintiff's claim that he was unconstitutionally arrested and searched "does not differ in a meaningful way from the core *Bivens* context, and thus does not present a 'new context.'"). Accordingly, the Court considers the merits Salaman's search and seizure claim.

The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A 'search' in the context of the Fourth Amendment occurs when the police intrude upon a person's reasonable expectation of privacy or if the police otherwise trespass upon one's person, house, papers, or effects for the purpose of acquiring information." *Conroy v. Caron*, 275 F. Supp. 3d 328, 340 (D. Conn. 2017). "A 'seizure' under the Fourth Amendment occurs when the police intentionally terminate one's freedom of movement by means of physical force or by show of their official law enforcement authority." *Id.* "In general, to search, seize property from, or arrest a

11

person in that person's home, the Fourth Amendment requires a state actor to have probable cause and a warrant, absent 'exigent circumstances or some other exception.'" *Hart v. Myers*, 183 F. Supp. 2d 512, 518 (D. Conn. 2002), *aff'd*, 50 F. App'x 45 (2d Cir. 2002) (quoting *United States v. Gori*, 230 F.3d 44, 50 (2d Cir. 2000)). "[B]ecause warrantless searches are presumptively unreasonable, it is the government's burden to show that a warrantless search, seizure or arrest fits within one of the narrowly tailored exceptions to the warrant requirement of the Fourth Amendment." *Id.* at 519 (internal citation and quotation marks omitted).

Here, Salaman alleges that the Swat Team forcefully entered a home in which he was sleeping and arrested him. *See* Compl. at ¶¶ 23, 27. This was undoubtedly a seizure. And although Salaman does not indicate one way or another whether the arrest was pursuant to a warrant founded upon probable cause or whether it was a warrantless arrest, the Court takes judicial notice of the fact that Salaman was arrested pursuant to a warrant. *See United States v. Salaman*, Case No. 3:22-CR-76 (SRU), at ECF No. 11. Throughout the prosecution of Salaman's criminal case, he was represented by counsel and eventually convicted at trial of several offenses. *See id.* at ECF Nos. 499, 502. And having been presented before a Magistrate Judge on the Complaint/warrant, *see id.* at ECF No. 7, Salaman was certainly aware that he was arrested pursuant to a warrant. *Cf. Llorens v. Slavin*, No. 3:21-CV-1096 (SVN), 2021 WL 5988632, at *4 (D. Conn. Dec. 17, 2021) (permitting Fourth Amendment claim to proceed because "there [we]re no facts to suggest that Plaintiff was engaged in illegal activity or that Defendants had previously obtained a warrant for Plaintiff's arrest."). The Complaint therefore fails to state a Fourth Amendment claim under *Bivens*.

Fourteenth Amendment Claims

Salaman also asserts two claims under the Fourteenth Amendment: a substantive due process claim and an equal protection claim, both brought under *Bivens*. *See* Compl. at pp. 20, 24.

*Substantive Due Process*

A substantive due process claim may be brought under either the Fifth or Fourteenth Amendment. *See County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (analyzing a substantive due process claim under the Fourteenth Amendment); *Lombardi v. Whitman*, 485 F.3d 73, 78 (2d Cir. 2007) (analyzing a substantive due process claim under the Fifth Amendment); *Tyus v. Newton*, No. 3:13-CV-1486 (SRU), 2016 WL 6090719, at *7 (D. Conn. Oct. 18, 2016) ("Claims of due process violations arising under the Fifth and Fourteenth Amendments are analyzed under the same standards."). But regardless, "the Supreme Court has 'narrowed the scope of substantive Due Process to claims that are not covered by other provisions of the Constitution.'" *20 Dogwood LLC v. Vill. of Roslyn Harbor*, No. 23-930, 2024 WL 1597642, at *1 (2d Cir. Apr. 12, 2024) (summary order) (quoting *Hu v. City of New York*, 927 F.3d 81, 103 (2d Cir. 2019)). Thus, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' such a claim." *Albright v. Oliver*, 510 U.S. 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal quotations omitted)).

Here, because the Fourth and Eighth Amendments plainly apply to the challenged actions of Defendants, any substantive due process claim must be dismissed. Indeed, Salaman's substantive due process claim arises from the same factual allegations as his Fourth Amendment

13

and Eight Amendment claims, namely, that Defendants subjected Salaman to excessive force and unlawfully entered his residence and arrested him, and were later deliberately indifferent to his serious medical needs. *See Hu*, 927 F.3d at 104 (affirming dismissal of a substantive due process claim because it "rest[ed] on the same set of factual allegations" as plaintiff's equal protection claim and therefore "must be analyzed under the Equal Protection Clause"); *Nadeau v. Anthony*, No. 3:03-CV-34 (AWT), 2003 WL 22872150, at *2 (D. Conn. Dec. 2, 2003) ("[P]laintiff may not pursue a cause of action under the Fourteenth Amendment for violation of his right to substantive due process when a cause of action for his claim exists under the Fourth Amendment.").

*Equal Protection*

Salaman's equal protection claim fares no better. While the Supreme Court "ha[s] allowed a *Bivens* action to redress a violation of the equal protection component of the Due Process Clause of the Fifth Amendment," *Iqbal*, 556 U.S. at 675 (citing *Davis*, 442 U.S. at 228), Salaman's equal protection claim applies in a "new context" even though "it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernández*, 589 U.S. at 103; *see, e.g.*, *Sabir v. Williams*, No. 3:20-CV-8 (VAB), 2020 WL 3489522, at *6 (D. Conn. June 26, 2020) (concluding that the plaintiff's "equal protection claim concerning prison commissary classifications is contextually distinct from [the] gender discrimination employment claim" in *Davis*). Moreover, special factors counsel against applying Plaintiff's equal protection claim in a new *Bivens* context, because Plaintiff has an alternative available remedy under the FTCA. *See id.* (concluding plaintiff also had "alternative remedies available through the Bureau of Prison's administrative remedies process or a different lawsuit seeking injunctive relief."). Accordingly, Salaman's equal protection claim must be dismissed.

Eighth Amendment Claims

In Count Four, Salaman asserts two claims under the Eighth Amendment: a cruel and unusual punishment claim and a deliberate indifference to medical needs claim, both brought under *Bivens*. *See* Compl. at p. 26.

"Although [Salaman] alleges both 'deliberate indifference' and 'cruel and unusual punishment' by [members of the Swat Team], 'these claims are based on the same facts and are different ways of phrasing the same Eighth Amendment claim.'" *Mitchell v. Schauer*, No. 3:23-CV-896 (JAM), 2024 WL 1973434, at *3 n.43 (D. Conn. May 3, 2024) (quotation omitted); *see also Quint v. Lantz*, 248 F. App'x 218, 220 (2d Cir. 2007) (summary order) ("To prevail on a cruel-and-unusual punishment claim, a plaintiff must establish both that his medical condition is 'objectively serious,' and that the defendants he seeks to hold liable acted with 'deliberate indifference' to his medical needs."); *Washington v. City of Binghamton*, 152 F.3d 922 (2d Cir. 1998) (Deliberate indifference to medical needs claims are brought "under the Eighth Amendment's Cruel and Unusual Punishments Clause").

While the Supreme Court has recognized an implied damages remedy under the Eighth Amendment in suits against federal jailers for failure to provide adequate medical treatment, *see Abbasi*, 582 U.S. at 131 (citing *Carlson*, 446 U.S. 14), the Eighth Amendment does not apply to federal pretrial detainees like Salaman. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (concluding that federal pretrial detainee's claims were analyzed under the Fifth Amendment, not Eighth Amendment, "[b]ecause as a pre-trial detainee [plaintiff] was not being 'punished[.]'"). Accordingly, notwithstanding that both *Carlson* and this case involve allegations of deliberate indifference to serious medical needs, Salaman's claim "arises in a new *Bivens* context" because

it "is different in a meaningful way from previous *Bivens* cases decided by th[e] [ Supreme] Court." *Abbasi*, 582 U.S. at 147.  First, "[t]he constitutional right is different here, since *Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth." *Abbasi*, 582 U.S. 120, 148 (2017).  Second, the magnitude of the alleged deliberate indifference is also different.  In *Carlson*, it resulted in the plaintiff's death. *See Carlson*, 446 U.S. at 16 n.1.  Here, by Salaman's own photos, it involved an untreated cut on Plaintiff's knuckle and a dime-sized scrape on his knee.[3]  *See* Compl. at Ex. 1 (p. 49), Ex. 2 (p. 50).

Additionally, special factors counsel against applying Plaintiff's claim in a new *Bivens* context because once again, Plaintiff has an alternative available remedy under the FTCA. *See, e.g., Bettis v. Grijalva*, No. 21-CV-7505 (GWG), 2023 WL 4141869, at *7 (S.D.N.Y. June 23, 2023) ("[T]he existence of a tort remedy for deliberate indifference to medical needs under the FTCA by itself strongly counsels against the creat[ion] of a *Bivens* remedy.").  Accordingly, this claim must be dismissed. *See, e.g., Bravo v. U.S. Marshals Serv.*, 684 F. Supp. 3d 112, 125–26 (S.D.N.Y. 2023) (dismissing federal pretrial detainee's deliberate indifference *Bivens* claim against U.S. Marshals because, among other reasons, the conduct was not as serious as in *Carlson* and plaintiff could sue under the FTCA).

Recklessness Claim

Lastly, Salaman asserts a freestanding claim for "recklessness" under *Bivens*. *See* Compl. at p. 28.  Because "recklessness" is not an independent constitutional tort under Section 1983, the Court construes Salaman's "recklessness" claim as being brought under Connecticut state law.

---

[3] These injuries are unlikely "sufficiently serious" to state a deliberate indifference claim on the merits, even if a *Bivens* remedy were available. *See, e.g., Montavon v. Town of Southington*, No. 3:95-CV-1141, 1997 WL 835053, at *4 (D. Conn. Sept. 29, 1997) (plaintiff's cuts and scrapes, unaccompanied by profuse bleeding or other conditions, did not constitute a medical condition that was sufficiently serious for purposes of Fourteenth Amendment).

*See Medeiros v. O'Connell*, 150 F.3d 164, 170 (2d Cir. 1998) (noting that a police officer's "recklessness[] is not enough to impose constitutional liability" as a substantive due process violation); *Maitland v. Devlin*, No. 3:19-CV-828 (JCH), 2020 WL 13547731, at **2–4 (D. Conn. Jan. 14, 2020) (discussing statutory and common law "recklessness" causes of action under Connecticut state law).  Nevertheless, it is well-settled that a plaintiff cannot assert a *Bivens* claim against a federal official for a violation of state statutory or common law, because "[a] plaintiff bringing a claim under *Bivens* must allege that he has been deprived of a *constitutional right* by a federal agent acting under color of federal authority."  *Thomas*, 470 F.3d at 496 (emphasis omitted).  Accordingly, Salaman's recklessness claim must be dismissed.

<u>Claims for Injunctive and Declaratory Relief</u>

In addition to seeking damages, Salaman also seeks injunctive and declaratory relief.  *See* Compl. at p. 31.  However, it is well-settled that "[t[he only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."  *See Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007); *Cicchiiello v. Warden Danbury FCI*, No. 3:24-CV-1240 (VAB), 2025 WL 437305, at *2 (D. Conn. Feb. 7, 2025) ("Bivens provides only for money damages and not for injunctive or declaratory relief."); *see, e.g.*, *Berry v. Golden*, No. 3:24-CV-292 (KAD), 2024 WL 2862294, at *2 (D. Conn. June 6, 2024) (dismissing request for injunctive relief based on *Bivens* claims); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("For people in Bivens'[s] shoes, it is damages or nothing.") (citation omitted).  Accordingly, and insofar as Salaman's entire Complaint is brought under *Bivens*, his claims for injunctive and declaratory relief must be dismissed.

**Conclusion**

For all of the foregoing reasons, the Complaint is **DISMISSED**. The Clerk of Court is directed to close this case.

**SO ORDERED** this 22nd day of August 2025 at Bridgeport, Connecticut.

         */s/ Kari A. Dooley*
         KARI A. DOOLEY
         UNITED STATES DISTRICT JUDGE